### HELEN E. MARSH

*v.*

### JOSEPH A. MARSH.

[Decided May 6th, 1918.]

1. Where land was sold under a restrictive covenant that no building should be erected thereon unless the front foundation wall of said building is at least seventy-five feet from the front of said premises on Sunset Parkway North, the erection of a structure which is a porch below and a second story above is a violation of that covenant, even if the structure is supported by piers and not by a solid foundation wall.

2. The term "foundation wall" in such a covenant does not necessarily imply a solid wall but includes anything that takes the place and serves the purpose of a foundation wall.

3. While the language of a restrictive covenant is to be strictly construed the court is not obliged to attribute a strict technical meaning to each word used, where to do so would result in defeating the perfectly clear intent of the grantor. The court may construe the language used in the light of all the circumstances, the test being whether the construction put upon the language by the court is so clear that by the acceptance of the deed the acceptor may reasonably be deemed to have understood and acceded to the terms of the restriction as so construed.

4. Because the complainant acquiesced in the erection of the porch, he is not estopped by laches from complaining of the erection of a second story thereon.

5. *Howland* v. *Andrus, 81 N. J. Eq. 175,* distinguished.

On bill, &c. ·

*Messrs. Edwin B. & Philip Goodell,* for the complainant.

*Mr. Charles Jones,* for the defendant.

LANE, V. C.

The bill is filed to enforce the provisions of a restrictive covenant. Both complainant and defendant derive title from a common grantor, the executors of Erwin J. Crane. Crane owned a considerable tract of land along a street in Montclair known as Sunset Park North. There is no doubt but that there was a plan of development adopted by which it was contemplated that no house should be built upon any of the property, the main structure of which should be within seventy-five feet of Sunset Park North. In the deeds which were made, including that to defendant, there was this restrictive covenant: "That no building shall be erected on said lot unless the front foundation wall of the said building is at least seventy-five feet from the front of the above premises on Sunset Parkway North." The house of defendant is on the corner of Norwood avenue and Sunset Park North and faces Norwood avenue. The front foundation wall is parallel to Norwood avenue. Prior to the purchase by defendant of the premises in question, and prior to October, 1910, a dwelling-house had been erected. There was attached to it a porch, resting upon piers, facing Sunset Park North, extending for a distance of approximately fourteen feet, within the seventy-five-foot distance referred to. No objection was made to this structure, nor do I think there could have been an objection made to it. Some time in 1917 defendant proceeded to make alterations which are now complained of. He filed plans with the building department of Montclair. These plans indicated that a foundation wall was to be placed under, and that a second

story was to be erected over the porch. After objection by the complainant, the plans were altered so that the foundation wall was omitted. Substantially, however, so far as outward appearances are concerned, the structure is to be as the plans originally contemplated.

There are three questions to be decided—(1) What is the meaning of the restrictive covenant? (2) Does the proposed structure come within its inhibition? (3) Is the complainant estopped or guilty of laches?

*First.* I have no difficulty in construing the covenant. It reads: "That no building shall be erected on said lot unless the front foundation wall of said building is at least seventy-five feet from front of above premises on Sunset Parkway North." Construing it strictly, it seems to me that if any part of the front foundation wall is within seventy-five feet of Sunset Park North there is a violation of the covenant. If the defendant choose to build his building so that his front foundation wall fronts Norwood avenue rather than Sunset Park North, he must build it so that no part of it is nearer to Sunset Park North than seventy-five feet.

It seems to me that the reasoning of the court of errors and appeals in the case of *Howland* v. *Andrus, 81 N. J. Eq. 175,* does not apply. In that case, while it is true that the physical location of the properties was similar to the location of the properties under consideration in this case, the covenant was substantially different. The deed under which the complainant obtained title to the property fronting on Wildwood avenue contained a restriction that any building should be "so located that the front line thereof shall not be nearer than sixty feet to the street line measured at right angles thereto." It contained a further provision that no other lots should be sold except by deed containing the same restriction. The deed to the defendants of a corner lot on the corner of Wildwood avenue and Park street contained this restriction :

"The said houses to face on Park street on lots having a frontage of not less than one hundred feet, the front foundation wall of said dwelling to be at least fifty feet from the westerly side of Park street."

A map filed prior to the making of the deeds showed the corner lots facing Park street. Of this map the complainant at the time of his purchase had knowledge. Upon the defendants proceeding to erect a building fronting Park street, the side line of which facing Wildwood avenue, would be within sixty feet of the street line, complainant filed a bill for injunction. The court of chancery granted the injunction, holding "for the purpose of the covenant the line of the dwelling 'fronting' toward the street from which the measurements are to be taken, is to be considered as the 'front line' intended by the covenant, although this line might be in fact the side line of the dwelling."

The court of errors and appeals reversing intimated that this construction did violence to the language used. It based its determination, however, upon the fact that at most the complainant's right to relief was doubtful, and that being so, equity ought not to intervene. The covenant now under discussion is substantially different. It forbids the erection of any building unless the front foundation of such building is at least seventy-five feet from the front of said premises on Sunset Parkway North. In the *Andrus Case* the street from which the measurements were to be made is not indicated by name, but the covenants clearly refer to the street upon which the building fronts. In the case at bar, the street from which the measurements are to be taken is named, to wit, Sunset Park North. Although the court of errors and appeals said in the *Andrus Case* that while the word "side" might be used in a generic sense to include "front," the word "front" as applied to a house is always specific, yet it seems to me that it may appear from the context that the user of the word may not have used it in the specific sense indicated by the court of errors and appeals. Again, referring to the covenant, the grantor says that the front foundation wall of the building must be at least seventy-five feet "from the front of said premises on Sunset Parkway North." The grantor here clearly indicates that he is referring by the word "front" to that portion of the lot adjacent to Sunset Park North.

The clear purpose of the grantor as expressed in the covenant was to prevent the erection of a structure with foundation walls nearer to Sunset Park North than seventy-five feet.

*Second.* Does the proposed structure violate the restrictive covenant?

I think it does. It may be that from a technic architectural standpoint, what is being erected is an upper porch. It is a fact that there are no "foundation walls" (in the technical sense) under the lower porch. I have examined photographs of the structure in question and it appears that defendant has in reality, so far as outward appearance is concerned, added two wings to his house. It is not contended that if the structure which is built on the other side of the house had been built on the side fronting Sunset Park North there would not be a violation of the covenant. So far as outward appearance there is no distinction between that portion of the structure which faces Sunset Park North and that portion of the structure built on the other side of the house. Yet defendant insists that, because he has induced the building department of Montclair to permit the erection of the structure facing Sunset Park North without a foundation wall (speaking technically), although it looks the same as the other, it is not within the terms of the restrictive covenant. I think that the language "front foundation wall" does not necessarily imply a solid wall (*Cornell* v. *Bickley, 52 N. W. Rep. 192; 85 Iowa 219*), but includes anything which takes the place and serves the purpose of a foundation wall, and I think that the piers which support the double-decked structure are within the meaning of the restrictive covenant a part of the front foundation wall of the building, and being within a distance of seventy-five feet from Sunset Park North, there is a violation of the restrictive covenant.

I have considered the cases of *Walker* v. *Renner, 60 N. J. Eq. 493; Atlantic City* v. *Young Amusement Co., 63 N. J. Eq. 831; Fortesque* v. *Carroll, 76 N. J. Eq. 583.* The rules to be applied in the determination of cases such as this as gathered from these cases seem to be clear. The language of the covenant is to be strictly construed. If it has a plain meaning, it is to be enforced in that sense. If it has no meaning, it cannot be enforced.

If it may mean either one of two things, it will be construed to mean that which is most favorable to the owner of the property. If complainant's right to relief be doubtful equity ought not to intervene. But none of the rules laid down deprive the court of the power to construe the language used in the light of all of the circumstances—this very thing was done in *Walker* v. *Renner, supra.* Nor is the court obliged in a case where to attribute a strict technical meaning to each word used would result in defeating the perfectly clear intent of the user of the language to apply such strict technical meaning. The test is whether the construction put upon the language by the court is so clear as that by the acceptance of the deed containing the restriction the acceptor may reasonably be deemed to have understood and acceded to the terms of the restriction as so construed. *Fortesque* v. *Carroll, supra.*

The clear purpose of a restrictive covenant, such as now under consideration, is to prevent the erection of something which can be sensed by one of the senses. When the grantor used the language "foundation wall" he had primarily in mind, not the masonry forming the foundation, but the structure superimposed, or a structure ordinarily superimposed upon a foundation wall which would appeal to the sense of sight of a neighbor. To hold that a person under the terms of such a covenant may erect a main structure (which would ordinarily rest upon a foundation wall and be within the terms of the covenant) without a foundation wall, technically speaking, and be without the terms of the covenant, would render the language of the restrictive covenant meaningless.

*Third.* Defendant insists that because of the acquiescence of complainant and her predecessors in title in the existence of the lower porch so called that she is charged with laches, or is estopped from questioning the building of the proposed structure. There can be no claim that there was any laches after complainant ascertained that defendant intended to build the structure now being erected. The answer to the contention of defendant is that prior to the proposed changes the structure existing was in fact but a porch. The change proposes not only the erection of a second story but an alteration of the lower

porch.   As I have before pointed out as originally proposed there were to be foundation walls under the lower porch.   These walls were abandoned upon objection being made by complainant, with the consent of the Montclair building authorities.   While it is true that the roof of the structure as proposed is not a continuation of the roof of the main structure, yet it is so connected with the roof of the main structure, and the nature of the construction of the second story addition is such, as that to the eye the entire structure appears to be one main building.   I do not think the complainant could have objected to the existence of the porch as it was prior to the alteration.   I think the alteration has changed its nature so that the complainant may now object.

Decree for complainant.

Settle decree on five days' notice.

Throughout these conclusions the words "Sunset Park North" and "Sunset Parkway North" have been used to designate the same street.   The reason is that in the documents dealing with the title the words have been used interchangeably.