**CENTRAL IOWA GRADING, INC.,**
**Plaintiff-Cross-Appellant,**

v.

**UDE CORPORATION, a/k/a United Design & Engineering Corp.,**
**Defendant,**

**Nelson-Roth, Inc. and United Missouri Mortgage, Defendants-Appellants.**

No. 85–543.

Court of Appeals of Iowa.

June 25, 1986.

David M. Duree and James A. Bingley of Leritz, Reinert & Duree, St. Louis, Mo. and Michael Vinyard of Vinyard & Curran, Ottumwa, for defendants-appellants.

Dan L. Dudley of Murray, Davoren & Dudley, Des Moines, for plaintiff-cross-appellant.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ., but considered en banc.

HAYDEN, Judge.

Defendant owners appeal a judgment for plaintiff in a mechanic's lien foreclosure action. They assert that 1) the subcontractor had no lien rights since the contractor breached its contract with the owner and the cost of completion exceeded the contract amount; 2) the subcontractor was not entitled to a lien for extra work performed without written change orders; 3) the trial court erred in finding that contractor's failure to waive the contractual requirement for written change orders was irrelevant and that evidence was insufficient to establish any waiver; and 4) evidence was insufficient to establish that certain extra work conferred any benefit on the property. We affirm in part and reverse in part.

In June 1980, defendant Nelson-Roth, Inc. contracted with UDE Corporation for the construction of a low-income housing project, which was then to be sold to the Low Rent Housing Authority. Thereafter, UDE subcontracted with Central Iowa Grading, Inc. (CIG) to perform all the site grading for a lump sum of $50,000.00. Of this amount, $9,860.00 is still owing.

CIG also performed certain extra work not contemplated by the subcontract. Pursuant to the contract between Nelson-Roth and the housing authority, all claims for extras were required to be by written change orders. Similar provisions were in the general contract between Nelson-Roth and UDE, and the subcontract between UDE and CIG.

Three requests for change orders totalling $2,485.00 were approved by UDE and Nelson-Roth. CIG also performed approxi-

mately $38,000.00 worth of extra work at the oral direction of UDE. Although UDE indicated that written change orders would be forthcoming, none were executed for this work.

UDE failed to pay plaintiff for the additional work performed. Nor did the contractor pay the balance owing under the terms of the subcontract. On February 13, 1981, CIG timely filed a mechanic's lien in the amount of $57,249.56. Nelson-Roth was given notice of the filing and promptly notified UDE that it was withholding payment in the amount of the plaintiff's lien.

The relationship between Nelson-Roth and UDE subsequently became strained. Nelson-Roth eventually terminated the agreement with UDE and completed the project at an additional cost of $300,000.00.

In April 1981, CIG filed this suit in equity to foreclose its mechanic's lien against Nelson-Roth and to establish the priority of its lien over the mortgage of the United Missouri Mortgage Company.

At trial, CIG presented evidence of the work it performed, some of which was alleged by the owner to have conferred no benefit to the property. The trial court found that UDE had waived the writing requirement for the extra work and that the work performed by CIG was in furtherance of the ultimate goal of the contract between UDE and the owner. The court also determined that whether Nelson-Roth waived the written change order requirement was irrelevant as to CIG's right to establish its claim. Judgment was entered for CIG in the amount of $50,343.07, representing $9,860.00 owed under the subcontract, $2,485.00 for extra work approved by Nelson-Roth and UDE, and $37,998.07 for work which was not approved by Nelson-Roth.

Nelson-Roth and United Missouri Mortgage appealed this result. CIG filed notice of cross-appeal, but raised no additional issues.

Our review of this equitable action is de novo. Iowa R.App.P. 4. While we give deference to the findings of the trial court, we are not bound by them. Iowa R.App.P. 14(f)(7).

## I.

Defendants argue the trial court erred in finding that CIG had any lien rights because UDE allegedly breached its contract and Nelson-Roth's cost of completion exceeded the contract amount.

■ A subcontractor's right to a lien is governed by the statutory provisions set forth in chapter 572 of the Iowa Code. Section 572.16 provides in relevant part: "Nothing in this chapter shall be construed to require the owner to pay a greater amount than is provided in the owner's contract with the principal contractor." Thus, where the principal contractor commits such a substantial breach that he is not entitled to payment, the right of the subcontractors to enforce their liens is also lost. *Kawneer Mfg. Co. v. Renfro & Lewis*, 186 Iowa 1344, 1347, 173 N.W. 899, 900 (1919).

■ In the present case, there is insufficient evidence to support defendants' claim that a substantial breach occurred. The only evidence cited by defendants was the testimony of James Nelson, Vice-President of Nelson-Roth. He testified that the housing authority was disenchanted with UDE and that Nelson-Roth ultimately terminated the project when it was approximately 50 percent complete. However, the precise circumstances surrounding this termination are not apparent from the record. Undoubtedly, the relationship between Nelson-Roth and UDE became strained. Yet this testimony, without more, does not indicate any sort of breach of contract by UDE, much less a substantial breach.

Accordingly, we find that CIG has enforceable lien rights. The record is inadequate to support the conclusion that these rights were lost through UDE's actions.

## II.

Defendants also argue the subcontractor was not entitled to a lien for the $37,998.07 worth of extra work performed without written change orders.

As we have indicated, both the principal contract and the subcontract required prior

approval by written change orders. UDE waived this requirement in the subcontract by entering into oral agreements with CIG regarding the extra work. However, defendants contend that the written change order requirement is an enforceable provision of the principal contract which precludes CIG's recovery for extra work.

The principal contractor is, of course, bound by the terms of his contract with the owner. In the absence of statutory modification, subcontractors are also bound by the terms of the contract between the owner and the principal contractor. *See Casler Electric Co. v. Carlsen*, 249 Iowa 289, 86 N.W.2d 682 (1957) (subcontractor charged with knowledge of terms of principal contract). A written change order requirement, however, is not of the essence of the contract, but is a detail in the performance. *Berg v. Kucharo Construction Co.*, 237 Iowa 478, 489, 21 N.W.2d 561, 567 (1946). This type of requirement can be waived by the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards the requirement, and a promise to pay for extra work, orally requested by the owner and performed in reliance thereon. *Id.* at 488, 21 N.W.2d at 567.

In the present case, Nelson-Roth arguably waived the written change order requirement. The record reflects that Nelson-Roth approved three change orders well after the related extra work was performed. This course of dealing would indicate that the contract provision requiring prior written approval was disregarded. Even so, it does not follow that CIG should be compensated for all extra work performed.

A waiver of a written change order requirement does not entitle a subcontractor to perform extra work without any approval whatsoever. The general rule is that recovery can be had for extra work only if it was performed with the knowledge or consent of the adverse party. 17A C.J.S. *Contracts* § 364 (1963).

The present record does not support a finding that Nelson-Roth knew of or consented to the extra work performed by CIG. The scope of and payment for the extra work was agreed to by CIG and UDE. There is no indication that Nelson-Roth knew of this agreement until well after the work had been completed. Nor is there evidence indicating that Nelson-Roth consented to payment. In fact, the company stated in correspondence that it did not consider the work to be an extra to their contract.

Based on the record before this court, we conclude that CIG is not entitled to be compensated for the $37,998.07 worth of extra work performed. The judgment is accordingly reduced to $12,345.00, representing the amount owed under the subcontract and the extra work which was approved by Nelson-Roth.

### III.

Because of our disposition of the previous issue, we need not address Nelson-Roth's claim that the extra work did not benefit the property. We note parenthetically, however, that several of the claims for extras appear questionable in this regard.

CIG had to rework building pads because, at the direction of UDE, it did not wait for necessary soil testing to be done. Other claims were necessitated by errors on the part of either UDE or CIG. Furthermore, one of the largest claims was required because the housing authority allegedly demanded that concrete fill be removed. Apparently, UDE directed that the concrete be removed and replaced with compacted earth fill, even though the housing authority had no contractual right to make such demands.

While these facts are not determinative in our decision today, we note that we would be hesitant to find Nelson-Roth liable for payment for such work.

AFFIRMED IN PART; REVERSED IN PART.